## 68321. SIPLAST, INC. v. INLAND CONTAINER CORPORATION.
### (323 SE2d 187)

QUILLIAN, Presiding Judge.

The plaintiff, Siplast, Inc., appeals from the grant of defendant Inland Container Corporation's motion for directed verdict. Siplast brought this action to foreclose a materialman's lien against Inland's property. Inland was the owner of the building improved with Siplast's material. Inland had contracted with "Top All Roofing Services, Inc." to reroof their building in Rome, Georgia. The contract was signed: "Top All Roofing Services Inc. by Virgil J. Whorton." The person signing for Top All was Virgil J. Whorton, Sr. Virgil J. Whorton, Jr. was the owner of the business and used several "trade names": "Top All Roofing Company," "Top All Roofing Services," "Top All Roofing Services Company," and "Top All Roofing Services, Inc." The junior Whorton did not incorporate his business but used the corporate title as a "trade name." The senior Whorton did not work for Top All or the junior Whorton, but was authorized to sign the Inland contract because he knew Inland's Production Manager, Glenn Hall, and was instrumental in getting Inland to give the contract to Top All. The senior Whorton was never paid for any services to Top All and participated in the Inland contract as a favor to his son because he knew Inland's Production Manager, had more experience in roofing, and the junior Whorton had never been involved in a contract as large as the Inland job.

Glenn Hall, the Production Manager for Inland, testified that they selected Siplast material for their roof and were aware that it carried a 10-year warranty only if it was applied by an approved contractor. He was asked: "And you accepted the contractor, or you accepted that the [sic] person who did it was approved by Siplast? A. Yes. Q. Otherwise you wouldn't have the guarantee? A. Yes." Siplast had approved only the junior Whorton and "Top All Roofing Services," not the senior Whorton or "Top All Roofing Services, Inc." The junior Whorton was in charge of the Inland job although the senior Whorton was on the job about "60 percent" of the time and ap-

peared to be in charge when he was there. The junior Whorton deferred to his father because he had more experience and had obtained the contract from Inland for Top All. Siplast provided more than $34,000 worth of material for the Inland job and invoiced it to "Top All Roofing Co." and "Top All Roofing Services" at the "Inland Container Corp., Rome, Ga." Inland did not require a performance bond from Top All, nor did they include a waiver of liens in the contract, or obtain a sworn statement from the contractor that laborers and materialmen had been paid — in accordance with Code Ann. § 67-2001 (2) (now OCGA § 44-14-361 (b)). After completion of the roofing Inland paid the full contract price to "Top All Roofing Services, Inc." and the checks were deposited by the junior Whorton in the Top All account. He was the only person who could withdraw funds from or write checks on that account. Siplast was never paid for its material but timely filed a materialman's lien against the Inland property and obtained judgment against the junior Whorton and "Top All Roofing Services" for the value of the materials furnished to Top All and the junior Whorton on the Inland roofing job. It is not contested that Siplast properly filed its claim of lien within the statutory time, and obtained judgment against its account debtor — the individual and company they approved to install its products — the junior Whorton and "Top All Roofing Services."

Inland defended on the ground that Georgia's lien statutes mandate a contractual relationship exist between the owner of the property improved and the person to whom the materials were furnished. It also argues that Inland was the owner of the property and it contracted with "Top All Roofing Services, Inc." and the senior Whorton. The materialman contracted with the junior Whorton and "Top All Roofing Services." Inland contends that it dealt with the senior Whorton and a corporation, which it was estopped to deny (Code Ann. § 22-5103, now OCGA § 14-5-4), and never knew of the existence of the junior Whorton. Accordingly, it claims that no contractual relationship existed between the owner of the property, Inland, and the person to whom the materials were furnished, the junior Whorton. Inland moved for and was granted a directed verdict. Siplast brings this appeal. *Held*:

The contract between Inland and "Top All Roofing Services, Inc." signed "by" the senior Whorton for Top All was not executed under seal. Parol evidence may be used in contracts not under seal, involving undisclosed principals, to show that the person executing was an agent acting on behalf of the correct principal. *United States Fidelity &c. v. Coastal Service, Inc.*, 103 Ga. App. 133, 136 (118 SE2d 710); accord *Dorsey v. Rankin*, 43 Ga. App. 12 (1), (2) (157 SE 876); *Powell v. Ferguson Title &c. Co.*, 125 Ga. App. 683 (2) (188 SE2d 901). Hence, evidence was admissible that the junior Whorton was the

owner of "Top All Roofing Services, Inc." and the senior Whorton who executed the contract for Top All was his agent.

Inland desired to use Siplast materials and was aware that if they were to receive a 10-year guarantee, they had to deal with an approved Siplast dealer. The junior Whorton was the approved Siplast dealer and they contracted with his business organization d/b/a "Top All Roofing Services, Inc." Thus, the roofing contract was between Inland and "Top All Roofing Services, Inc." which was owned by the junior Whorton — the account debtor of Siplast.

All materialmen furnishing material to contractors or subcontractors for improvement of realty shall have a special lien against such property unless the true owner shall show that the lien has been waived, in writing, or produces the sworn statement of the contractor, or subcontractor at whose request the work was done or the material was furnished which shows that the cost thereof has been paid. Code Ann. § 67-2001 (2) (now OCGA § 44-14-361 (b)). "The manifest purpose of this statute is to make the property of the owner liable for material which entered into the construction of the improvement on the employment of a contractor, within the limits of the contract price, unless the materialman waives his lien, or unless, upon the final . . . payment of the contract price, takes from his contractor a sworn statement that all work done or material furnished has been paid for at the agreed price or reasonable value . . ." *Short & Paulk Supply Co. v. Dykes*, 120 Ga. App. 639, 642 (171 SE2d 782). "Additionally, it is the owner's responsibility to see to it that the payments which he makes on the construction contract price are properly disbursed by the contractor to those having valid claims for labor and materials, and in establishing his defense to the foreclosure he has the burden of showing that this was done." *Henderson v. Mitchell Engineering Co.*, 158 Ga. App. 306, 307-308 (279 SE2d 750); accord *Jones Mercantile Co. v. Lyn-Har, Inc.*, 245 Ga. 812, 813 (267 SE2d 251). Thus payment by Inland to Top All did not release the properly filed lien, absent a showing that Inland had obtained a sworn statement from Top All that the funds owed to laborers and materialmen had been disbursed. Inland made no such showing.

Moreover, even if, as claimed by Inland, they had dealt with a corporation and the senior Whorton as their contractor, the work was done by the junior Whorton and his business — Top All. This procedure is the same as, or similar to, a general contractor subcontracting with another company to do the actual work. Inland is not protected from a claim of lien for material furnished to a subcontractor (the junior Whorton and Top All) which is used to improve Inland's realty. Code Ann. § 67-2001 (2) (now OCGA § 44-14-361 (b)); *Sasser & Co. v. Griffin*, 133 Ga. App. 83, 85 (210 SE2d 34). Hence, the materialman (Siplast) to the subcontractor (the junior Whorton and Top All)

would have a valid claim of lien against the property's true owner (Inland) absent a waiver of lien or a sworn statement from the purported contractor (the senior Whorton) that the laborers and materialmen had been paid. Inland obtained no such waiver or any sworn statement from its purported contractor, as it was its duty to do if it desired to protect its property from a claim of lien (*Henderson v. Mitchell Engineering Co.*, 158 Ga. App. 306, 308, supra.)

The trial court improperly directed a verdict for Inland.

*Judgment reversed. Birdsong, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED SEPTEMBER 14, 1984 —
REHEARING DENIED OCTOBER 10, 1984

*Wright W. Smith*, for appellant.
*Walter J. Matthews*, for appellee.